UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **United States of America** | : |
| | : |
| v. | : No. 09-cr-294, 18-cr-140-7 |
| | : |
| **Richard Colon** | : |
| | : February 4, 2021 |
| | : |

### ORDER AND DECISION DENYING MOTION FOR COMPASSIONATE RELEASE AND MOTION FOR INDICATIVE RULING; DKT. 734, 735

Before the Court is a motion for compassionate release and motion for indicative ruling filed by the defendant, Richard Colon, seeking a sentence reduction to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 734 (Mot.), and 735. Mr. Colon argues that extraordinary and compelling reasons warrant a reduction in sentence to time served in light of the risk of serious illness he faces if reinfected with COVID-19 and the heightened risk of reinfection while incarcerated. In support of his claim of risk of serious illness, Mr. Colon has provided over 300 pages of medical records. Dkt. 157 (Med. Records Vol. 1), Dkt. 158 (Med. Records Vol. 2), Dkt. 170 (Med. Records Vol. 3). The Government has filed oppositions to these motions arguing that (1) the Court lacks authority to grant Mr. Colon's motion because he has an appeal pending from his sentence, and (2) the § 3553(a) factors weigh decisively against relief. Dkt. 748 (Opp.), Dkt. 749. Mr. Colon filed a reply, indicating he tested positive again for COVID-19, that his second infection demonstrates the BOP does not have adequate measures to mitigate the spread, and he is sufficiently deterred based on the more-difficult than average experience he has had while incarcerated. Dkt. 752 (Reply). The Court

1

ordered Mr. Colon to file evidence supporting his claim that he has tested positive for the COVID-19 a second time, which he did.  Med. Records. Vol. 3.

After reviewing the pleadings and exhibits, the Court denies Mr. Colon's motions for the following reasons.

I.   BACKGROUND

A. Case Background

This matter involves two separate criminal cases.  The first was brought in 2009, docket number 09-cr-294, where Mr. Colon pled guilty to possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  09-cr-294, Dkt. 78.  The then-presiding judge, Judge Covello, sentenced Mr. Colon to 37 months in custody and 36 months of supervised release to follow.  *Id.*  While on supervised release, Mr. Colon admitted guilt to violating several conditions of his supervision—including the prohibition on committing another federal, state or local offense—and was sentenced to twelve months in custody to run concurrent with a related 2018 offense discussed below.  09-cr-294, Dkt. 151.

The second criminal case was brought in 2018, docket number 18-cr-140-7, where Mr. Colon pled guilty to conspiracy to distribute and to possess with intent to distribute controlled substances in violation of §§ 846, 841(a), 841(b)(1)(B)(vi).  18-cr-140, Dkt. 562.  Mr. Colon's arrest was made in connection with an investigation into interconnecting drug trafficking groups with some members who were in or associated with the Almighty Latin Kings Nation.  Presentence Report ("PSR"), Dkt. 493 at ¶ 12.  Mr. Colon was associated with a drug trafficking organization ("DTO") with locations in and around Hartford, Connecticut.  *Id.* at ¶

15.     The investigation into this DTO uncovered evidence relating to the dangerousness of the organizations members aside from selling illegal substances.  For example, one of the principals of the DTO, Jimmy Flores, told a confidential source that he "shot up the Bean Pot" which is a restaurant known to be frequented by a rival street gang.  *Id.* at ¶ 13.  Another member of the DTO, Julian Bravo, was robbed of his money and drugs then shot twice by a drug customer.  *Id.* at ¶ 20.  Following the shooting of Mr. Bravo, another member of the DTO, Marisol Ferry, posted threatening comments on Facebook.  *Id.* at ¶ 21 (Ms. Ferry stated that: "N----s 'tried' to take his life . . . tables done turned somebody owes they life now rs . . . ").

In and around May 2018, investigators conducted several controlled purchases from Mr. Colon.  *Id.* at ¶ 29.  "On June 11, 2018, investigators did buy/bust of 500 bags of suspected fentanyl from Mr. Colon." *Id.*  "At the time of his arrest a total of 518 white wax sleeves, each stamped with an 'X,' containing a white powder substance were located in Mr. Colon's Acura MDX. The substance tested positive for Fentanyl."  *Id.* at ¶ 34.  However, "most of the suspected fentanyl was sham, and that some of the controlled buys, Mr. Colon sold the CHS caffeine." *Id.* at ¶ 30.  In addition to the drugs recovered from Mr. Colon's person, Mr. Colon took responsibility for drugs found at his sister's house and at his uncle's house. *Id.* at ¶ 37.  Mr. Colon was held responsible for forty-two grams of fentanyl and admitted to this drug quantity. *Id.* at ¶¶ 38, 41.

Mr. Colon has a lengthy criminal history beginning when he was 17 years old and continuing until his most recent conviction for the underlying offense when he

was 41 years old. In 1997, Mr. Colon was sentenced for possession of narcotics and failure to appear resulting in a three-year custodial sentence, which was suspended, and two years of probation. *Id.* at ¶¶ 59, 61. In 1998, Mr. Colon was sentenced for criminal impersonation resulting in a one-year custodial sentence, which was also suspended, and three years of probation. *Id.* at ¶ 57. In September 1999, Mr. Colon was sentenced for criminal mischief, third degree larceny, and two counts for failure to appear resulting in a total three-year custodial sentence. *Id.* at ¶¶ 58, 60. Then in December 1999, Mr. Colon was sentence for robbery in the first degree (involving conduct that occurred in or around November 1998) resulting in a two-year custodial sentence to run concurrent with the September 1999 convictions with an additional four years of probation. *Id.* at ¶ 62.

In 2002, Mr. Colon was sentenced for the sale of hallucinogen/narcotics resulting in a thirty-month custodial sentence. *Id.* at ¶ 63. In March 2005, Mr. Colon was sentenced for interfering/resisting resulting in a sentence of time served. *Id.* ¶ 64. In December 2005, Mr. Colon was sentenced for forgery in the second degree resulting in a $500 fine. *Id.* at ¶ 65. In 2007, Mr. Colon was sentenced for breach of peace in the second degree resulting in a six-month custodial sentence. *Id.* at ¶ 66. And, as mentioned previously, in 2009 Mr. Colon was sentenced in federal court for possession with intent to distribute resulting in a thirty-seven-month custodial sentence and thirty-six months of supervised release. *Id.* at ¶ 67.

For the 2018 case conduct, Mr. Colon was sentenced to serve eighty-seven months in custody with four years of supervised release to follow. *Id.*

**Prior to sentencing Mr. Colon for violating the conditions of supervised release and committing another criminal offense while on supervision, the Court asked the parties if they had any objection to any fact stated in the final Presentence Report filed in 18-cr-140-7. Mr. Colon's counsel objected to the statement that Mr. Colon's offense conduct included 42 grams of fentanyl because the offense conduct did not involve 42 grams of pure fentanyl, but rather a mixture and substance containing a detectable amount of fentanyl. Dkt. 662 & 666 (Sentencing Tr.) at 5-6. The Government rebutted stating that in a couple of controlled purchases, there was no heroin just fentanyl. *Id.* Further, the Government cited to the applicable Guidelines provision stating that, for purposes of calculating the base offense level, the court must use the most serious substance in a mixture. *Id.* at 6–7. *See* USSG § 2D1.1(c)(A) ("If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level."). The Court overruled the objection raised, stating further that "when you read the totality of the PSR and recognizing the lethality of fentanyl, no one could reasonably construe the PSR to suggest it was pure fentanyl." Sentencing Tr. at 7. Concluding that the Presentence Report read as a whole accurately stated Mr. Colon's offense conduct, the Court adopted the facts stated in the report as its findings of fact. *Id.* at 9.**

**The second issue raised by defense counsel related to the difference in criminal history category calculation between the plea agreement and the presentence report. *Id.* at 26. The plea agreement calculated Mr. Colon's criminal**

5

history category at a V, but the Probation Office calculated him at VI. *Id.* Defense counsel did not dispute the Probation Office's calculation but did seek a *Fernandez* departure. *See United States v. Fernandez*, 877 F.2d 1138, 1145 (2d Cir. 1989) ("a district court presently may depart from a Guidelines sentence in order to give effect to a plea bargain if such a departure is warranted."). The Court rejected this request finding that the language of the plea agreement contemplated that the criminal history category calculation provided therein is preliminary and that no persuasive argument had been made that the Court should defer to the preliminary assessment. Sentencing Tr. at 27–28, 34.

In sentencing Mr. Colon, the Court considered the 3553(a) factors. *Id.* at 33–35. The Court stated that "The offense that Mr. Colon committed was an offense that was widely known, widely known, to be the cause of the worst drug-induced epidemic this country has ever known." *Id.* at 33. Further, Mr. Colon "was not under any delusions that [what] he was doing was lethal and profoundly destructive." *Id.* The Court noted that "Mr. Colon has displayed in this court an astounding lack of empathy, an astounding lack of empathy for others." *Id.* Finally, the Court found that Mr. Colon has been unremitting in the commission of crimes that endanger the lives of others. *Id.* at 35.

Mr. Colon took an appeal of the Court's sentence; 18-cr-140, Dkt. 566. The matter is pending before the Second Circuit. *See* Second Circuit Docket 20-700.

Mr. Colon was detained for approximately nineteen months at the time of his sentencing. It has been approximately eleven months since his sentencing on February 12, 2020. Meaning, he has served approximately thirty months of his

ninety-nine-month sentence—i.e., approximately 30% of his sentence has been served as of the date of this decision.

　B. Medical History

Mr. Colon is 42 years old. *See* 18-cr-140, Dkt. 493 (PSR) (providing Mr. Colon's date of birth as 10/12/1978). His medical records characterize him as obese. Med. Records Vol. 2 at 9. As of April 24, 2020, Mr. Colon's reported weight was 224 pounds and his reported height is 66 inches; Med. Records Vol. 1 at 90; which equates to a BMI of 36.2 according to the CDC.[1]

Mr. Colon's medical records also report that he has a history of childhood asthma, but he has no ICU admission or intubation for asthma as an adult. Med. Records Vol. 2 at 9. He has been prescribed Mometasone Furoate to be taken nightly and Albuterol to be taken as needed for the treatment of this condition. Med. Records Vol. 1 at 4. Though Mr. Colon stated in his PSR that he may be diabetic, PSR at ¶ 93, there is no evidence of such a condition in his medical records.

On or around August 10, 2020, Mr. Colon tested positive with COVID-19 and at the time was asymptomatic. *Id.* at 13. Three days later, on August 13, 2020, he began developing symptoms such as body aches, nasal congestion, runny nose, sore throat, and fatigue. *Id.* at 28. At the time, his temperature was 98.4, his SaO2 was at 97%, he did not report having persistent chest pain, nor was he experiencing a loss of taste and/or sense of smell. *Id.* at 28–29. Five days later on August 18,

---

[1]　*Adult BMI Calculator*, CDC.Gov, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Jan. 5, 2021).

2020, he was still experiencing aching but the pain was more mild, and he was experiencing fatigue. *Id.* at 44. His temperature at the time was 98.6, and he no longer had nasal congestion, a runny nose, or sore throat. *Id.* By August 25, 2020, he reported having no symptoms. *Id.* at 67.

According to Mr. Colon's reply to the Government's opposition, he tested positive again for COVID-19 on December 29, 2020. Reply at 1. His motion indicates he is experiencing shortness of breath, coughing, and body aches. *Id.* Mr. Colon provided medical records that confirm he has tested positive for COVID-19 for a second time. Med. Records Vol. 3 at PDF p.2–3, 111–16. Contrary to counsel's statement in the reply—that Mr. Colon is symptomatic, an assertion not supported by a citation to his medical records—Mr. Colon's medical reports show he is not experiencing symptoms. *Id.* The records specifically state that Mr. Colon has no "Cough, Shortness of Breath, Fatigue, Body aches, Sore throat, Diarrhea, Headache, Loss of taste or smell, Nausea or vomiting." *Id.* at 111–16. His temperature between January 8, 2021 (the earliest recording for January 2021) and January 14, 2021 (the date of the Reply), Mr. Colon's temperature has been between 96.8 and 98.4, and his SaO2 has been between 97% and 99%. *Id.*

C. <u>Prison Conditions & Exhaustion</u>

According to Mr. Colon and the BOP website,[2] Mr. Colon is currently located at Ray Brooks Federal Corrections Institution (FCI) in Ray Brook, New York. As of January 25, 2021, the BOP reports that 5 inmates at Ray Brook FCI are currently

---

[2] *Find an inmate*, BOP.Gov, https://www.bop.gov/inmateloc/ (last visited Jan. 15, 2021).

8

infected with COVID-19.[3]  The BOP also reports that Ray Brooks FCI has 730 total inmates.[4]  Based on these figures, 0.7% of the inmate population at Ray Brooks FCI is currently infected with COVID-19.

Mr. Colon made a request for compassionate release to the warden of Ray Brook FCI, which was denied.  Med. Records Vol. 2 at 121.

## II.   LEGAL STANDARD

Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*  The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.*

---

[3] *COVID-19*, BOP.Gov, https://www.bop.gov/coronavirus/ (last visited Jan. 25, 2021).
[4] *FCI Ray Brook*, BOP.Gov, https://www.bop.gov/locations/institutions/rbk/ (last visited Jan. 25, 2021).

"The defendant bears the burden of showing that she is entitled to a sentence reduction." *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020).

### III.     ANALYSIS

#### a.  Authority to Adjudicate Compassionate Release with Pending Appeal

As stated above, Mr. Colon has appealed his sentence. The appeal is currently pending before the Second Circuit. Courts in this jurisdiction have found that an appeal from a sentence divests the court of jurisdiction to grant motions for compassionate release. *See e.g., United States v. Mack*, 460 F. Supp. 3d 301, 302 (W.D.N.Y. 2020). With that said, the Court may still review the merits of the motion and either "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37. For the reasons provided below, the Court is exercising the second option in denying the motion.

#### b.  Exhaustion

Mr. Colon made a request for compassionate release to the warden of Ray Brook FCI, which was denied. Med. Records Vol. 2 at 121. The Government concedes that Mr. Colon has exhausted his administrative remedies. Opp. at 9. The Court finds that Mr. Colon has exhausted his administrative remedies, and thus this motion is properly before the Court.

c. <u>Extraordinary and Compelling Reasons</u>

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See* U.S.S.G. 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> (A) Medical Condition of the Defendant.--
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> 
> [or]
> > (ii) The defendant is--
> > > (I) suffering from a serious physical or medical condition,
> > > (II) suffering from a serious functional or cognitive impairment, or
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> > 
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13, Commentary Application Note 1(A).  Any "other" "extraordinary and compelling reason" may also justify relief.  *Id.* at Commentary Application Note 1(D).

"[T]he mere existence of COVID-19 in society and the possibility that it might spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  But this Court and

others have recognized that an inmate's chronic medical condition that elevates his risk of becoming seriously ill from COVID-19 according to the CDC may be such an extraordinary and compelling reason. *See United States v. Sanchez*, No. 18-CR-00140-VLB-11, 2020 WL 1933815, at *5 (D. Conn. Apr. 22, 2020) (collecting cases).

Here, Mr. Colon has presented evidence that he is obese, as defined by the CDC. In addition, he has presented evidence that he has a history of childhood asthma and receives medication. Mr. Colon does not claim, nor presents evidence that, his asthma is not well-maintained through the medication he has been prescribed. Mr. Colon has not cited to any evidence that shows he has experienced an asthma attack or otherwise required immediate treatment for asthma related events. Nor has he presented evidence establishing whether his asthma is moderate or severe.

The CDC has identified that people with a BMI of 30 or higher "are at increased risk of severe illness from the virus that causes COVID-19" and people with moderate to severe asthma "might be at an increased risk."[5] While Mr. Colon has set forth evidence of obesity, he has failed to set forth evidence that he suffers from moderate to severe asthma. The CDC guidelines on those who are at an increased risk is just that, a guideline. There are reported cases of people who fit within these guidelines who experience serious illness when infected with COVID-19 and others who do not, including Mr. Colon. Mr. Colon has now had the virus twice. The first time he experienced mild symptoms and the second time he

---

[5] *People with Certain Medical Conditions*, CDC.Gov, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 15, 2021).

experienced no symptoms whatsoever.  This tends to show that Mr. Colon is not at an increased risk of serious illness if infected with COVID-19.

Whether Mr. Colon is at a heightened risk of a third infection requires consideration of the conditions of his confinement.  The BOP has taken efforts to limit the spread of COVID-19 in their facilities.[6]  The efforts include limiting social visits entirely or, where visitation is possible, mitigating the risk of spread by requiring the use of plexiglass, barriers, or social distancing, as well as requiring temperature checks, face coverings, and disinfecting surfaces.  The BOP has modified operations to limit movement of inmates in the facility where possible.  All new intakes are screened and tested; those who are symptomatic go into medical isolation where those who are not go into quarantine for at least 14 days.  Only after an inmate tests negative through a PCR test will the inmate be allowed out of quarantine.  In addition, temperature checks and COVID-19 screening are being conducted on staff, contractors, and other visitors.  The fact that the BOP has been able to detect both instances that Mr. Colon was infected with the virus lends support to the position that the BOP is testing inmates repeatedly.

In addition to mitigating the spread, the BOP has begun vaccinating its staff members and intends to vaccinate inmates shortly thereafter.  On January 4, 2021, the BOP released its seventh version of COVID-19 Vaccine Guidance.[7]  Mr. Colon, who is obese as defined by the CDC, would be entitled to the vaccine in level 2 of the BOP plan, meaning he will receive the vaccine after staff and those inmates

---

[6] *See BOP Modified Operations*, BOP.Gov, available at: https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 8, 2021).
[7] Available at: https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf.

13

who work in health services or are in nursing care centers, but before all other inmates. While there is not exact date on when Mr. Colon will receive the vaccination from the BOP, he is likely to receive a vaccine well before when he would receive it if released. Eligible members of the general public in Connecticut are not expected to have access to the COVID-19 vaccine until the start of summer.[8] Meaning, if Mr. Colon's true reason for seeking compassionate release is out of fear of reinfection, he is more likely to be vaccinated from the virus by not being released at this time.

Even though Mr. Colon does have a condition that may put him at a risk of severe illness if reinfected with COVID-19, the evidence that he has had the virus twice and has not had severe illness tends to support that he is not at serious risk. In addition, Mr. Colon is more likely to be vaccinated sooner while incarcerated than if released. Therefore, the Court does not find an extraordinary and compelling reasons to justify Mr. Colon's compassionate release at this time.

d. <u>Section 3553(a) Factors</u>

Though the Court has already found a lack of extraordinary and compelling reason for compassionate release, the Court will also consider whether compassionate release would have been granted after application of the § 3553(a) factors.

When Mr. Colon was sentenced in February 2020, the Court sentenced him to a total custodial sentence of ninety-nine months following application of the

---

[8] *See CT COVID-19 Vaccine: Phases and Eligibility*, CT.Gov, available at: https://portal.ct.gov/Coronavirus/COVID-19-Vaccination---Phases (last visited Jan. 8, 2021).

14

3553(a) factors.  While the Court considered all of the 3553(a) factors, the first factor deserves mention in this decision.  That is the nature and circumstances of the offense and the history and characteristics of the defendant.  The seriousness of the offense conduct cannot be understated.  Mr. Colon was involved in a dangerous DTO and was personally involved in the distribution of fentanyl.  The National Institute on Drug Abuse found that "[d]eath involving synthetic opioids other than methadone (including fentanyl and fentanyl analogs) continued to rise with more than 28,400 (a rate of 9.9) overdose deaths in 2018.[9]  In Connecticut, "[f]atalities involving synthetic opioids other than methadone (mainly fentanyl and fentanyl analogs) continued to increase with 767 deaths (a rate of 22.5) reported in 2018."[10]  Even when a user does not die from use of fentanyl, the drug ruins their lives and the lives of those who love them.  Mr. Colon's conduct preyed on persons addicted to this horrific and lethal substance for personal, financial gain.

     Mr. Colon has proven to be an unremitting criminal offender, beginning his criminal conduct at the age of seventeen and continuing into his forties.  He has been given lenient, suspended sentences that have proven ineffective to deter his conduct.  He has been given custodial sentences for as long as thirty-seven months and still he remained undeterred.  He was given the benefit of supervised release and the tools of the United States Office of Probation, and still he returned

---

[9] Available at: https://www.drugabuse.gov/drug-topics/opioids/opioid-summaries-by-state/connecticut-opioid-involved-deaths-related-harms (last visited Jan. 8, 2021).
[10] *Id.*

15

to dangerous criminal conduct. His criminal history underscores the importance of him serving the sentence imposed upon him less than 11 months ago.

In Mr. Colon's motion he summarizes the arguments made by the defense during his sentencing—such as the request for a *Fernandez* departure, the drug quantity weight, and Mr. Colon's relative conduct—but he has presented no argument as to why this is relevant to the Court's determination for this decision. If the defense is arguing that the arguments made at sentencing are relevant to the 3553(a) factors analysis, the Court takes them under advisement. However, these arguments were raised and considered by the Court at sentencing. These arguments do not establish why Mr. Colon is entitled to compassionate release after serving only approximately 30% of his sentence.

Mr. Colon also states generally that he made the most out of his pretrial detention, where he obtained a Barber Apprenticeship, and that he has been an exemplary inmate based on his lack of disciplinary history and completed education courses. This evidence does not lend support to his argument here. While it is commendable and a wise decision to take advantage of the programs afforded to him, the fact that he has done so does not justify the significant reduction requested. Further, his lack of disciplinary infractions, which is also commendable and a wise decision, is not a sufficient basis for the reduction sought because his compliance with prison rules is expected from him. *See United States v. Mumuni Saleh*, 946 F.3d 97, 112 (2d Cir. 2019) ("no substantially mitigating weight can be borne here by the fact that [the defendant] did what was plainly required of him—that is, behaving himself in prison.").

Mr. Colon also argues that the conditions of confinement during the COVID-19 pandemic was not anticipated by the Court when he was sentenced. While this is true, it does not justify the significant departure he is seeking now—he has only served approximately 30% of his sentence. Living conditions during the pandemic are certainly difficult but this is a sentiment experienced by most of the population, whether incarcerated or not.

The sentence he seeks would be for approximately thirty months, which is seven months less than the sentence he received for his 2008 case. That sentence did not sufficiently deter Mr. Colon because the 2018 case conduct occurred while he was on supervision for the 2008 offense. In other words, if thirty-seven months was insufficient to deter him, a thirty-month sentence even when considering the difficult experiences he has had as of late, does not leave the Court with the impression it will sufficiently deter future criminal wrong doing. The risk of future wrongdoing is significant here because Mr. Colon has repeatedly proven that when he is released from prison he will return to criminal conduct, including poisoning others with dangerous substances such as fentanyl for personal, financial gain. Mr. Colon has also proven that such conduct can occur whether he is supervised or not.

Therefore, the § 3553(a) factors weigh against compassionate release.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Mr. Colon's motions.

IT IS SO ORDERED.

                                              _____
                                              **Hon. Vanessa L. Bryant**
                                              **United States District Judge**

Dated this day in Hartford, Connecticut: February 4, 2021